MAJKO *v.* STATE OF INDIANA.

[No. 30,380. Filed May 18, 1965.]

*McNutt, Hurt & Blue,* of Martinsville, for appellant.

*Edwin K. Steers,* Attorney General, and *Carl E. Van Dorn,* Deputy Attorney General, for appellee.

MYERS, J.—This is an appeal from a judgment of conviction in the Morgan Superior Court. Appellant was charged by affidavit with the crimes of (1) operating a motor vehicle with a suspended operator's license; (2) operating a motor vehicle while under the influence of intoxicating liquor; and (3) public intoxication. There was a trial without the intervention of a jury on August 27, 1962. The matter was taken under advisement, and on December 6, 1962, the court found appellant guilty of driving a motor vehicle while his operator's license was suspended. He was sentenced to one hundred eighty days' imprisonment on the Indiana State Farm.

A motion for new trial was filed promptly based upon the following grounds: (1) The finding of the court was contrary to law; and (2) the finding of the court was not sustained by sufficient evidence. The motion was overruled and this appeal followed.

Appellant's argument is divided into two parts. In the first part he claims that the State failed to prove the suspension of his driver's license. In the second part

he contends that the court lacked jurisdiction to enter a finding and judgment on December 6, 1962.

As to the first part of the argument, the record reveals that appellant was in Indianapolis on July 22, 1962. He was going to Paragon to visit a friend over the week-end. The friend drove to Indianapolis and picked up appellant after obtaining a 1960 Ford convertible. The friend's wife was with him, but she drove a separate automobile. On interrogation of the friend, the following colloquy took place:

"Q. Allright, and what was the purpose of your going up there?

"A. I went up there to pick him up, as he was coming to my house to spend the weekend.

"Q. Allright, Then you knew at that time that he did not have a drivers license, is that correct?

"A. Yes.

"Q. Was that the purpose of this?

"A. Yes."

The two of them proceeded to drive to Martinsville after stopping at an auction held in a sale barn. They were halted by a police officer just before entering town. At that time, appellant was in the rider's seat of the automobile. They were not held for any offense. Later on that night the same officer saw the car being driven by appellant who went around two or three blocks in Martinsville, then pulled into a lot of high weeds, stopped the car and got out presumably to go into a nearby apartment house where his wife lived. That is where he was arrested, taken to the police station and charged with driving a motor vehicle when his operator's license was suspended.

There was a conflict in the testimony as to whether appellant was driving the motor vehicle at that time, but this was resolved by the trial judge who found in favor of the State. The point is not argued by appellant

in his brief, so no issue is presented to us as to the operation of the automobile. Appellant merely contends that there is insufficient proof of the suspension of his license on July 22, 1962.

We have previously stated that appellant's friend said he drove to Indianapolis in order to pick up appellant and drive him to Paragon for the week-end because appellant had no driver's license. Appellant's employer, a Used Car Dealer in Indianapolis, testified to the following:

> "The lot we have at 1020 E. Washington Street, Joe Majko is the manager of this lot, and I knew that Joe didn't have drivers license and the Chevrolet these people were driving looked like it might have some trouble, and I depend on him a lot so I gave Mr. Sparks [appellant's friend] the 60 Ford Convertible to take Joe home, also with the understanding that he would return him Monday morning, and also that he would not let him drive the car."

On cross-examination of appellant, the following question was asked:

> "Q. Also on the 16th day of September 1961, your operator's license were suspended for a period of two years, was it not?
> "A. That is right. That is the reason I made sure that I had somebody to chauffer me."

Appellant argues that no definite proof of the revocation of his driver's license was introduced in evidence as provided by statute. He contends that the only way a revocation could be proved was to bring into the record an abstract of his conviction as provided by Burns' Ind. Stat., §47-1052, 1952 Replacement (Supp.), subparagraph (e), which reads as follows:

> "(e) The abstract provided for by this section shall be in such form as the commissioner of the bureau of motor vehicles shall prescribe and when

duly certified by the appropriate officer shall be received and accepted by any administrative agency or court as prima facie evidence of the conviction or judgment and all other action therein stated."

This was not done. The State attempted to have the trial court take judicial knowledge of its own proceedings in an alleged Cause numbered S 61 S 164 ■ wherein it was claimed appellant was charged with operating a motor vehicle while under the influence of intoxicating beverages and leaving the scene of an accident, found guilty of operating a motor vehicle while under the influence of liquor and his driver's license suspended for two years on date of September 16, 1961. These proceedings were not introduced in evidence and are not a part of the record, so they cannot be considered as evidence of the revocation of appellant's driver's license.

However, the admission by appellant, himself, and statements by other witnesses testifying in his favor are substantial evidence of probative value from ■■ which a reasonable inference could be drawn that appellant's driver's license was suspended as of July 22, 1962. It is the general rule that a judgment of conviction must stand if there is any legally-admitted evidence to sustain the substantial elements of the charge. 9 West's Ind. Law Ency., *Criminal Law*, Ch. 30, §715, p. 213. There was sufficient evidence here whereby the court could have determined that appellant had committed the misdemeanor with which he was charged, i.e., driving while license suspended.

As to the second part of appellant's argument, it is submitted that the Morgan Superior Court had lost jurisdiction when it entered its finding and judgment on December 6, 1962, because an excessive delay took place between date of trial on August 27, 1962, and date of

judgment. It is pointed out that the case was tried in the May Term of the Court; that the September Term expired, and judgment was entered in the November Term, which was the second term after trial. Supreme Court Rule 1-13 is cited as cause for reversal since the cause was taken under advisement for more than ninety days.

This rule has been termed "The Lazy Judge Rule" and provides for the disqualification of a judge, *upon application by the aggrieved party*, if such judge ■ does not make a determination of the issues after holding the cause under advisement for more than ninety days. Provision is made for the appointment of a special judge to take jurisdiction. We do not see how this rule applies in this case, particularly as there is no showing that appellant filed his written application to withdraw the submission before the trial judge announced his decision on December 6, 1962.

Furthermore, this issue was not presented to the trial court by motion for new trial. Supreme Court Rule 2-6 requires that the motion for new trial shall sep- ■■ arately specify as grounds therefor each error relied upon however and whenever arising up to the time of filing such motion for new trial. Rule 2-6 also provides that the overruling of the motion for new trial shall be the only means of raising on appeal errors asserted to have occurred before, during and after trial and arising up to the time of filing such motion. Since the alleged error was not included in the motion for new trial, it presents no question for this court to decide. *Edwards* v. *Wyllie* (1964), 246 Ind. 261, 203 N. E. 2d 200.

Judgment affirmed.

Arterburn, C. J., and Achor and Landis, JJ., concur.

Jackson, J., dissents with opinion.

512

## DISSENT

JACKSON, J.—I cannot agree with the majority opinion and dissent thereto for the following reasons.

1. In the trial of a criminal case the requirement is that the defendant be proven guilty beyond a reasonable doubt, not "substantial evidence of probative value from which a reasonable inference could be drawn. . . . "

2. If this court is to weigh the evidence adduced, then the only evidence before the court tending to prove defendant's guilt was hearsay and inadmissible.

The judgment of the trial court should be reversed and the cause remanded with instructions to sustain the appellant's motion for a new trial.

NOTE.—Reported in 207 N. E. 2d 212.